UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 7:08-102-KKC

HAROLD V. SCHOPPLEIN,                                                    PLAINTIFF

v.                                          **OPINION AND ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security,                                        DEFENDANT

\* \* \* \* \* \* \* \*

This matter is before the Court on the Cross Motions for Summary Judgment filed by the

Plaintiff, Harold V. Schopplein [R. 10], and the Defendant, Commissioner Astrue [R.11].  For

the reasons stated below, the Court will **DENY** the Plaintiff's Motion for Summary Judgment

and **GRANT** the Defendant's Motion for Summary Judgment.

I.      **Factual and Procedural Background**

On January 11, 2005, Plaintiff Harold V. Schopplein filed applications for a period of

disability, disability insurance benefits, and supplemental security income.  He alleges that he

became disabled on August 1, 2004 due to back and leg injuries, blindness in the left eye,

anxiety, and depression.  Transcript [hereinafter "Tr."] at 63, 84.  Plaintiff explains that because

of his alleged impairments, he has difficulty seeing and he cannot walk for too long a period of

time or lift too much weight.  Tr. at 84.  Plaintiff says that he has had back problems for most of

his life and that they were exacerbated by automobile accidents in 1997 and 2005.  Tr. at 98, 106.

He says that chronic back pain, along with depression stemming from it, has made it "virtually

impossible" to maintain full-time employment.  Tr. at 98.  Plaintiff also states that a femur rod in

1

his left leg has become problematic and that his left eye blindness derives from German measles. Tr. at 98.  Surgery was recommended for Plaintiff's low back, but he elected not to undergo it. Tr. at 283.  Plaintiff is not currently taking any prescription medications for his pain, and he has not taken any since January or February 2007.  Tr. at 292-93.

Plaintiff's highest educational level is a GED he obtained in 1990.  Tr. at 87.  Although Plaintiff initially reported that he had never been employed, in his work history report he stated that he had worked from April 1997 to October 2004 as a flat and shingle roofer, and from April to August 2004 as a quality control inspector of finished blocks and as a machine operator.  Tr. at 84, 88, 91-93.  He worked at these jobs for ten hours daily, six days per week.  Tr. at 92-93. Plaintiff was incarcerated from 1986 to 1994.  Tr. at 94.  Plaintiff's routine activities consist of watching television, attending to his personal care, preparing sandwiches or microwaveable food items, folding clothes, doing light cleaning, reading the newspaper, handling his finances, talking on the telephone, and occasionally going out for social activities or shopping.  He otherwise spends his time staying in his residence doing little or nothing.  Tr. at 99-104.  Plaintiff claims that his impairments affect all of his physical movements, that he can only walk for five to ten minutes, and that he gets easily irritated by stress and changes.  Tr. at 104-05.  Plaintiff has had a long-standing substance abuse problem.  He says that he attends Alcoholics Anonymous meetings, though he stated in his hearing that he has not attended a meeting since moving to Kentucky in July 2007, that he has no sponsor, and that he is working on all twelve steps of the program.  Tr. at 294-95.

Plaintiff was interviewed by consultative examiner Steve Geiger on February 8, 2005. Plaintiff told Geiger that he has agoraphobia, panic attacks, suicidal thoughts, and problems with

2

fatigue, concentration, memory, and weight.  Tr. at 111.  Plaintiff said that he was depressed and anxiety prone, that he prefers to avoid people, and that he has chronic back and joint pain.  Tr. at 111-12.  Although Plaintiff denied that he had drinking or drug abuse problems, he admitted that he had been in four inpatient substance abuse programs.  Geiger stated that Plaintiff was not forthcoming about his past and present use of mood altering substances.  Tr. at 112.  Geiger stated that Plaintiff was unpleasant, that his motor skills appeared compromised, and that he had a slow gait.  He appeared to Geiger to be depressed, suspicious, and angry.  However, Geiter also noted that Plaintiff appeared to have good contact with reality, that he was logical and organized in response to questions, and that he was oriented to time, person, and place.  Tr. at 113-14.

Geiger diagnosed Plaintiff with major depression, recurrent, moderate; panic disorder with agoraphobia; and personality disorder, NOS (antisocial and schizoid traits).  Geiger ruled out substance abuse disorder, since he was unable to make a diagnosis here due to Plaintiff's not being forthcoming in this area.  Tr. at 115.  Geiger also noted that Plaintiff reported severe chronic back and joint pain, gastrointestinal difficulties, blood in the stool, a rod placed in the left leg after breaking it, a broken jaw repaired, and head injuries.  Geiger assessed a global assessment of functioning [hereinafter "GAF"] of fifty, gave Plaintiff a poor prognosis, and opined that Plaintiff is not able to manage his benefit funds.  Tr. at 115.

Dr. Helene Jones examined Plaintiff on February 9, 2005.  Plaintiff told Dr. Jones that he has chronic pain radiating down both legs, with the left leg worse than the right.  Tr. at 207.  Plaintiff stated that although he had previously been on Vicodin five years before, he was not then taking any medications.  He admitted to previous alcohol and marijuana use, but stated that he was not presently using either marijuana or alcohol.  Tr. at 207.  Dr. Jones noted Plaintiff's

long-standing problems with anger control, depression, and anxiety, which were "not being addressed at this juncture." Tr. at 208. Dr. Jones opined that Plaintiff has paralumbar tenderness that is central or slightly eccentric to the left, negative Straight leg tenderness, some questionable radicular symptoms with straight leg raise in the supine position on the left side, and no overt spasm. Tr. at 209. Plaintiff also had a slow range of motion with stiffness in the lower back, he could get on and off the examining table without difficulty, and he could walk heel-to-toe in tandem. Dr. Jones assessed long-standing history of depression, anxiety, rule out personality disorder, substance abuse, left-eye blindness, low back injury, and questionable compression fracture of the lumbar spine. Tr. at 209.

On February 18, 2005, Plaintiff was involved in a motor vehicle accident. Hospital records from this time revealed a C6 compression fracture, a closed head injury relating to a T5 compression fracture, L4-5 and L5-S1 disc herniations, and an incidental left five mm middle cerebral artery aneurysm. Tr. at 118. Plaintiff had an uncomplicated hospital stay, the T5 compression fracture and the aneurysm were cleared by neurosurgery, and he was then discharged with instructions to follow up with neurosurgery for the cerebral artery aneurysm and the disc herniations. Tr. at 118. Mount Hope Family Practice records from March 2, 2005 indicated that Plaintiff was alert and that he had no acute or respiratory distress. Tr. at 151. March 17, 2005 records noted Plaintiff's complaints of chronic back pain, that he had the general appearance of severe distress, that he was alert, and that his chest was non-tender. His extremities were also noted to be non-tender, he was oriented times three, and he had a normal mood and flat affect. Tr. at 149-50. Clinical impressions were similar to those from February 18, 2005. Tr. at 150. On May 2, 2005, Plaintiff said his back pain was exacerbated by standing;

4

his neck, back, and extremities were non-tender; he was alert, oriented times three, and he had a

normal mood and affect; and he had CVA tenderness.  Tr. at 146-47.

On June 9, 2005, Plaintiff obtained an MRI of his lumbar spine without contrast, as well

as complete/multiple bone scans, from the Pikeville Medical Center.  Dr. Dennis Halbert

reported disc space narrowing at L5-S1 with degenerative changes in the end-plates at the same

level, mild central protrusion of disc material at L5-S1, and mild circumferential bulging of disc

material at L4-L5.  Plaintiff's other discs were felt to be normal and his spinal canal was normal

in caliber.  Tr. at 156.  Plaintiff was also reported to have mild abnormal increased activity in the

area of the AC joint on the right as compared with the left, while the remainder of his skeleton

appeared symmetric with no other focal abnormalities identified.  Tr. at 157.

On June 24, 2005, Plaintiff had an initial consultation with the Spine and Brain

Neurological Center for neck, mid and low back, and right leg pain.  Plaintiff described his pain

as constant, with a severity of ten on a ten-point scale.  Tr. at 179.  Plaintiff stated that he had

never been to a pain clinic, never had spine surgery or steroid injections, and had never been

evaluated by another neurosurgeon.  A review of Plaintiff's symptoms revealed that he had no

vision problems, depression, anxiety, or nervousness, but that he did experience muscle spasms,

headaches, and neck, mid and low back, and right leg pain.  Plaintiff stated that he did not drink

alcohol, had no drug addictions, had never been convicted of a felony or misdemeanor, and had

never been under a psychiatrist's care.  He was ordered to submit to a drug screen.  Tr. at 179.

Plaintiff was oriented as to person, place, and time, and his attention span, concentration, and

memory were all intact.  He had a normal range of motion for his head, neck, and spine, his right

and left upper extremities showed negative Spurling's tests, and his head, neck, and spine were

negative for spasms and tenderness.  Plaintiff's reflexes were grossly normal, an examination of his sensation was grossly intact, and his mood and affect were grossly normal.  Tr. at 179.

On July 7, 2005, Plaintiff checked into Our Lady of the Way Hospital over episodes of blood in the stool.  Plaintiff was considered alert, calm, and cooperative, and he was oriented times three.  Tr. at 182-83.  Impressions were a nonspecific bowel gas pattern, left ventricular configuration, and bullae in the left suprahilar area.  Tr. at 191.

Plaintiff was examined by Dr. Christa Muckenhausen on July 12, 2005.  Plaintiff complained of neck, mid-back, lumbosacral, and cervical spine pain, along with headaches and decreased vision.  Tr. at 192.  Plaintiff stated that his low back pain was exacerbated with a radicular component into the left leg and into the left side of the upper extremity.  Tr. at 193.  He admitted to drinking only socially and denied any use of illicit drugs.  Tr. at 194.  Plaintiff was oriented as to person, place, and time; he appeared anxious, depressed, and irritable; and he had problems with concentration and attention; although he was cooperative.  Tr. at 195.  Plaintiff had tenderness in the cervical, mid-thoracic, and lumbosacral spine areas, in the left hip and sciatic groove areas, and in the left trapezius and Rhomboid group.  There were range of motion changes in Plaintiff's spine, a restricted range of motion in his left hip joint, and he experienced difficulties with his ambulation and toe and heel gait.  Tr. at 195.

Dr. Muckenhausen diagnosed Plaintiff with the following: cervical radiculopathy maximally left with stretch injury to the neuromuscular bundle causing radicular pain, numbness, and tingling; mid-back strain with thoracic radiculopathy into the left shoulder girdle area; lumbosacral strain with lumbosacral radiculopathy maximally left into the buttock area with sensory loss, pain, numbness, tingling, and weakness; headaches of migraineous type; decreased

6

left-eye vision; and history of sexual dysfunction. Tr. at 197. Dr. Muckenhausen recommended

that Plaintiff attend a headache/pain clinic, as well as physiotherapy and aquatherapy

intermittently, obtain an EEG, and obtain ophthalmologic consultation. Tr. at 197.

On August 17, 2006, Plaintiff was evaluated at Sparrow Health System for complaints of

sharp back pain that was exacerbated by movement. Tr. at 215, 218. Plaintiff's physical

appearance, gait, and speech were normal, his mood and affect were appropriate and alert, and he

was oriented times three. Tr. at 219, 221. Plaintiff's neck and abdomen were non-tender and his

lower back was tender with muscle spasms. Tr. at 219. Plaintiff was diagnosed with acute

exacerbation of chronic back pain, was prescribed Vicodin, Motrin, and Norflex, and was told to

return if his symptoms worsened. Tr. at 223. Plaintiff returned to Sparrow Health System on

September 26, 2006 with more complaints of chronic, severe back pain. Plaintiff appeared alert,

he was oriented times three, his mood and affect were normal, and he had no apparent motor or

sensory deficit. Tr. at 233. Plaintiff's neck and back had painless ranges of motion, although

Plaintiff described bony pain in both, his back had a normal inspection, and his back and

abdomen were non-tender. Tr. at 233. Plaintiff was instructed to apply heat or ice to the affected

areas of his body and to take Ibuprofen or Tylenol for his pain. Tr. at 237.

A medical source statement of Plaintiff's physical ability to do work-related activities was

completed by Dr. Gutti on January 30, 2007. Dr. Gutti opined that Plaintiff can occasionally

(and frequently) lift and carry less than ten pounds, can stand and walk less than two hours and

sit less than six hours in an eight-hour workday, and is limited in pushing and pulling in both the

upper and lower extremities. Tr. at 210-11. Dr. Gutti also stated that Plaintiff can never climb,

kneel, crouch, crawl, or stoop, and can only occasionally balance. Tr. at 211. Further, Plaintiff

7

can only do occasional reaching, handling, fingering, and feeling, and can have only limited contact with vibration.  Tr. at 212-13.  Dr. Gutti also summarized MRI results as showing degenerative disc disease, mild central stenosis, an old, mild T5 compression fracture, mild central protrusion disc material at L4-S1, and mild bulging of disc material at L4-L5.  Tr. at 211.

On March 30, 2007, consultative examiner Dr. Elaine Kountanis evaluated Plaintiff's medical condition.  Plaintiff discussed a brain aneurysm that was discovered in 2005 and back pain reflecting to his left leg, the severity of which he rated as a seven or eight on a ten-point scale.  Tr. at 239-40.  Plaintiff had no cyanosis or edema of the limb, no joint erythema or edema, his radial and pedal pulses were intact, and he had "some pain" to percussion at the spinous process in the cervical and mid thoracic region.  Tr. at 241.  Plaintiff had no muscle spasm; straight leg testing was negative bilaterally in the seated position; fine and gross motor coordination was intact for ADLs and independent ambulating; range of motion was normal to all areas, including the cervical and LS spine, hips, and knees; his gait was normal; and Plaintiff could walk heel-to-toe and full squat without assistance.  Tr. at 241.  Dr. Kountanis opined that Plaintiff can perform sedentary work, with a lifting restriction of ten pounds, since Plaintiff lifted at least this amount on a daily basis for ADLs.  Tr. at 242.  In her medical assessment of Plaintiff's physical ability to do work-related activities, Dr. Kountanis gave a range of ten to fifteen pounds for what Plaintiff could lift and carry.  Tr. at 243.  She also said that Plaintiff's standing, walking, and sitting are not affected by his impairments, that he can never climb, that his pushing and pulling are affected by the impairments, and that he should avoid heights and moving machinery.  Tr. at 244-45.

In response to a request from the Administrative Law Judge [hereinafter "ALJ"], on

8

August 21, 2007, Dr. Robert Marshall provided a medical opinion about Plaintiff's alleged impairments.  Dr. Marshall determined that Plaintiff does not suffer from an impairment or combination of impairments that meets or medically equals the Social Security listings, and detailed record medical evidence as support for his opinion.  Tr. at 248-49, 255.  Dr. Marshall went on to opine that Plaintiff can lift and carry twenty pounds frequently and fifty pounds occasionally; that his standing, walking, and sitting are not affected by his impairments; that he can frequently climb ramps or stairs, stoop, and kneel; and that he can occasionally crouch and crawl.  Tr. at 250-51.  Plaintiff's impairments also had no effect on his physical functions (and Dr. Marshall expressed uncertainty over Plaintiff's left-eye blindness) and they did not cause any environmental restrictions, other than certain restrictions if Plaintiff were assumed to have left-eye blindness.  Tr. at 252.

In addition, on August 29, 2007, Plaintiff presented at Our Lady of the Way Hospital for complaints of severe headaches with symptoms of nausea and vomiting.  Tr. at 263.  Plaintiff's mood and affect were normal, he appeared alert, and the rest of his physical and neurological examinations were normal.  Tr. at 261.  The impression was a well-defined bright density in the territory of the left middle cerebral artery suggestive of an aneurysm.  Neurological consultation was recommended.  Tr. at 260.

On March 23, 2005, a Psychiatric Review Technique evaluation was completed on Plaintiff's alleged mental impairments by state agency psychiatrist Paul Liu.  Liu diagnosed Plaintiff with depressive disorder, recurrent, moderate; panic disorder with agoraphobia; personality disorder, NOS; and stated that there was insufficient evidence to substantiate the presence of substance addiction disorder.  Tr. at 119-27.  Liu opined that Plaintiff has moderate

limitations in his activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace.  He also stated that Plaintiff's medical evidence does not establish the "C" criteria of the Social Security listings.  Tr. at 129-30.

In a Mental Residual Functional Capacity [hereinafter "RFC"] assessment, Liu determined that Plaintiff has moderate limitations in the following abilities: understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; responding appropriately to changes in the work setting; and setting realistic goals or making plans independently of others.  Plaintiff was not found to be significantly limited in any other ability.  Tr. at 133-34.  Liu concluded that Plaintiff is able to perform simple tasks in a work setting.  Tr. at 135.  Liu's psychiatric evaluation and mental RFC assessment were affirmed by state agency reviewing psychiatrist Jan Jacobson on June 17, 2005. Tr. at 158-76.

State agency physician Dr. Russell Holmes assessed Plaintiff's physical RFC on April 18, 2005.  Dr. Holmes determined that Plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently; can stand, walk, and sit six hours in an eight-hour workday (with normal breaks); and is limited in using his left leg.  Tr. at 138.  Dr. Holmes further found that Plaintiff can only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl, and can never climb ladders, ropes, or scaffolds.  Tr. at 139.  Plaintiff was supposed to avoid

10

concentrated exposure to fumes and hazards, and to avoid even moderate exposure to vibration. Tr. at 141. Dr. Holmes stated that Plaintiff was only partially credible regarding his symptoms. Tr. at 144. State agency physician Dr. Jorge Baez-Garcia essentially affirmed Dr. Holmes's physical RFC assessment on August 17, 2005. Dr. Baez-Garcia only differed with Dr. Holmes in a few areas: Dr. Baez-Garcia opined that Plaintiff is not limited in the use of his extremities, that Plaintiff can frequently kneel and crouch, that he has limited near acuity vision, and that he has no environmental limitations other than avoiding concentrated exposure to vibration. Tr. at 199-202. Dr. Baez-Garcia found Plaintiff's allegations of left eye blindness to be credible, but found his other symptom allegations to be only partially credible. Tr. at 203.

Plaintiff's disability application was initially denied by the Social Security Administration on April 21, 2005 and again on reconsideration on August 23, 2005. Plaintiff testified at an administrative hearing before ALJ William H. Gitlow on August 8, 2007, and again at a supplemental hearing on October 29, 2007, in Prestonburg, Kentucky. On December 13, 2007, the ALJ denied Plaintiff's disability application by written opinion. The ALJ determined that although Plaintiff had several severe impairments, these impairments were not severe enough to meet or medically equal the Social Security listings and that there is work that Plaintiff can still perform despite his impairments. As such, the ALJ did not find Plaintiff to be disabled and entitled to Social Security disability benefits. The Social Security Appeals Council denied Plaintiff's request to review the ALJ's decision, thus making it the final decision of the Social Security Administration. Plaintiff then brought the instant action before this Court on May 12, 2008 to challenge the Defendant's decision.

**II.     Standard of Review**

When reviewing decisions of the Social Security Administration, the Court is commanded to uphold the Administration's decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994). The Court is required to defer to the Administration's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Further, when reviewing the ALJ's decision, the Court cannot review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. Appx. 503, 506 (6th Cir. 2005).

**III.     Analysis**

**A.     Arguments and Governing Law**

In his Motion for Summary Judgment, Plaintiff argues that the ALJ failed to follow the correct procedure for evaluating the effect of Plaintiff's drug and alcohol abuse on her disability claim.  Specifically, Plaintiff states that the ALJ improperly determined first, that Plaintiff's drug

12

and alcohol abuse is not a contributing factor material to a disability finding, and second, that

Plaintiff is not disabled.  Plaintiff argues that the Social Security regulations and interpretive case

law instead required the ALJ to first make a disability determination, taking into account the

effect of Plaintiff's drug and alcohol abuse on his medical symptoms, and then to determine

whether that drug and alcohol abuse constitutes a contributing factor material to the disability

finding.  According to Plaintiff, this alleged procedural error is not harmless, as Defendant

asserts, that it requires reversal of the ALJ's decision, and that the decision is not otherwise

supported by substantial evidence.

It is the responsibility of the Commissioner of Social Security, acting through the ALJ, to

determine whether a Social Security disability claimant qualifies as legally disabled, and is thus

entitled to disability insurance benefits.  *See* 20 C.F.R. § 404.1527(e)(1).  To make this

determination, the ALJ must perform a five-step analysis, as follows:

> First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful
> activity" at the time she seeks disability benefits.  Second, plaintiff must show that she
> suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe
> impairment" is one which "significantly limits . . . physical or mental ability to do basic
> work activities."  Third, if plaintiff is not performing substantial gainful activity, has a
> severe impairment that is expected to last for at least twelve months, and the impairment
> meets a listed impairment, plaintiff is presumed to be disabled regardless of age,
> education or work experience.  Fourth, if the plaintiff's impairment does not prevent her
> from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step,
> even if the plaintiff's impairment does prevent her from doing her past relevant work, if
> other work exists in the national economy that plaintiff can perform, plaintiff is not
> disabled.

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1520,

404.920).  An impairment or combination of impairments is considered "severe" if it

"significantly limits [the claimant's] physical or mental ability to do basic work activities."  20

13

C.F.R. § 404.1520(c).  Moreover, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."  *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).  While the claimant bears the burden of proof for the first four steps of this process, if she does so, the burden shifts to the Commissioner for the final step.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 498 (6th Cir. 2006).

In addition, a two-part analysis is used to evaluate the credibility of a claimant's allegations of disabling pain.  First, the ALJ must determine whether the claimant has an underlying medically determinable impairment that could reasonably be expected to produce the claimant's symptoms.  20 C.F.R. § 929(a).  Second, if such an impairment exists, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to do basic work activities.  *Id.*  Relevant factors that may be considered in this evaluation include: the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment undertaken to relieve the symptoms; other measures undertaken to relieve the symptoms; and any other factors bearing on the ability of the claimant to perform basic work activities.  *Id.*; *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

In this case, the ALJ performed this five-step analysis.  The ALJ first found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date.  ALJ Opinion at 3.  Next, the ALJ determined that Plaintiff had the following severe medically determinable impairments: left eye blindness, back pathology, cerebral aneurysm, and substance abuse

14

disorder. *Id.* However, at step three of the analysis, the ALJ concluded that none of the impairments, either alone or in combination, met or medically equaled an impairment included in the Social Security listings. *Id.* at 6. The ALJ next found that Plaintiff has the following RFC: Plaintiff can lift and carry ten pounds occasionally and fifteen pounds frequently; he cannot push or pull over twenty pounds; he cannot climb; he cannot work at unprotected heights or around dangerous moving machinery; he can only occasionally balance, stoop, crouch, kneel, or crawl; he should avoid exposure to vibrations and avoid excessive dust, fumes, or gases; and he should avoid work requiring depth perception or peripheral vision to the left. *Id.* at 7.

Continuing to step four of the analysis, the ALJ said that Plaintiff cannot perform his past relevant work. *Id.* at 10. At the fifth and final step, the ALJ used the assistance of a vocational expert [hereinafter "VE"] to conclude that Plaintiff is able to perform jobs that exist in significant numbers in the national economy, and that he is therefore not disabled. *Id.* at 12.

**B.      Procedural Error**

**1.      ALJ's Analysis**

Plaintiff's procedural-error arguments center on a portion of the ALJ's opinion addressing Plaintiff's drug and alcohol abuse and its effect on Plaintiff's medical impairments. In this portion of the opinion, the ALJ considered the record evidence pertaining to Plaintiff's alleged depressive, anxiety, and personality disorders. The ALJ concluded that Plaintiff could not prove the existence of any non-substance induced severe psychological impairment, due to the record evidence indicating Plaintiff's continuous abuse of drugs and alcohol and lack of evidence revealing any sustained sobriety period since the alleged onset date. *Id.* at 4-5. The ALJ explained that under the tenets of DSM IV, complete abstinence is required before a

15

psychopathology may be diagnosed in a claimant.  Since Plaintiff could show no documented

period of time in which he was abstinent from drugs and/or alcohol, a non-substance induced

psychological impairment, severe or otherwise, simply could not be proven.  *Id.*

At this point, the ALJ acknowledged that he was taking a different analytical approach to

evaluating the impact of drug and alcohol abuse on a disability decision than that utilized by

several courts and recommended by the Social Security Administration in a memorandum

interpreting 20 C.F.R. § 404.1535.  This regulation states the following:

> (a) General.  If we find that you are disabled and have medical evidence of your drug
> addiction or alcoholism, we must determine whether your drug addiction or alcoholism is
> a contributing factor material to the determination of disability . . . .
> (b)(1) The key factor we will examine in determining whether drug addiction or
> alcoholism is a contributing factor material to the determination of disability is whether
> we would still find you disabled if you stopped using drugs or alcohol.
> (2) In making this determination, we will evaluate which of your current physical and
> mental limitations, upon which we based our current disability determination, would
> remain if you stopped using drugs or alcohol and then determine whether any or all of
> your remaining limitations would be disabling.
> (i) If we determine that your remaining limitations would not be disabling, we will find
> that your drug addiction or alcoholism is a contributing factor material to the
> determination of disability.
> (ii) If we determine that your remaining limitations are disabling, you are disabled
> independent of your drug addiction or alcoholism and we will find that your drug
> addiction or alcoholism is not a contributing factor material to the determination of
> disability.

20 C.F.R. § 404.1535.

Normally, explained the ALJ, the claimant has the burden of proof for this "materiality

analysis" since this inquiry would be undertaken at step two of the disability sequential analysis.

The Social Security Administration's interpretive memorandum further states that in situations

where a claimant's drug addiction and alcoholism is "inextricably bound" with a diagnosis of

another impairment, the ALJ is to defer to the Plaintiff and find that the impairment is non-

16

substance induced; in other words, that the claimant's drug addiction or alcoholism is not a contributing factor material to the determination of disability. ALJ's Opinion at 5. The ALJ interpreted this as instructing him, in situations where a claimant's drug addiction or alcoholism is inextricably bound with an impairment, to carve out an exception to the rule that the claimant has the burden of proof at this stage of the disability analysis.

The ALJ found no support for this burden-shifting instruction within the Social Security regulations and considered such an instruction contrary to the regulations' burden of proof rules. As such, the ALJ declined to follow the interpretive memorandum and instead left the burden of proof with Plaintiff. Since Plaintiff could point to no sustained period of sobriety in the record, the ALJ was unable to separate Plaintiff's underlying symptoms from the effects of the polysubstance abuse. Therefore, in the ALJ's mind, Plaintiff had failed to carry his burden of proof at this point because he was unable to prove the existence of a non-substance induced psychological impairment. Towards the end of the opinion, the ALJ asked the VE whether one with Plaintiff's age, education, work experience, and RFC would still be able to perform work. The VE said he would and listed several jobs that Plaintiff could perform. The ALJ then asked the VE to consider the limitations based on Plaintiff's drug addiction and alcoholism discussed earlier. The VE responded that these limitations would not affect the jobs previously stated. As such, the ALJ considered Plaintiff's polysubstance abuse "not material to a finding of disability," and concluded that Plaintiff is not disabled.

**2.     Polysubstance Abuse Materiality and Disability Determination**

Plaintiff charges that the ALJ committed procedural error in the above analysis by determining the materiality of the polysubstance abuse before determining whether Plaintiff is

disabled in the first place. Plaintiff cites several cases as persuasive authority for the proposition that the Social Security regulations require the ALJ to first determine whether Plaintiff is disabled, taking into account the effects from his polysubstance abuse. According to these cases, if Plaintiff is found disabled, then and only then may the ALJ determine whether the polysubstance abuse is a material contributing factor, by factoring out the effects of drug addiction and alcoholism and seeing whether these "discounted" impairments are still disabling.

The Court agrees with Plaintiff that the ALJ did decide the materiality issue before first deciding whether Plaintiff is disabled when considering the effects of his polysubstance abuse. The second hypothetical that the ALJ posed to the VE makes this clear: "I further asked the vocational expert to consider the limitations based on the claimant's polysubstance abuse set forth in Exhibits 5F and 10F." ALJ's Opinion at 11. Since this second hypothetical specifically accounts for the effects of the drug addiction and alcoholism, by implication the first hypothetical must address Plaintiff's disability status after discounting his impairments by the effects of the polysubstance abuse. Otherwise, the ALJ would be posing the same hypothetical to the ALJ twice. Although the phrase "materiality" is not explicitly mentioned in this first hypothetical, it is clearly a materiality determination, since it addresses the question of disability in the absence of the polysubstance abuse's contributing effects.

However, the Court does not agree with Plaintiff that the ALJ's decision to treat the materiality issue before making his disability determination constitutes reversible error. Assuming that error was committed, any such error was harmless. Plaintiff relies on cases like *Bruggemann v. Barnhart*, 348 F.3d 689 (8th Cir. 2003), and *Williams v. Barnhart*, 338 F. Supp. 2d 849 (M.D. Tenn. 2004) to argue that the ALJ's analysis is a reversible procedural error. In

18

*Bruggemann*, the ALJ excluded disability evidence presented by the claimant's treating source because in his view, "under the current statutory scheme the use/abuse of drugs and alcohol and the consequent affects [sic] are not permitted to be used to form a basis for disability." *Bruggemann*, 348 F.3d at 692-93 (internal quotation marks removed). This evidence was not included in the hypothetical the ALJ posed to the VE, and based on this restricted hypothetical, the claimant was not found disabled. *Id.* at 693.

The *Bruggemann* Court reversed the ALJ's decision, finding that he had failed to follow the correct procedure for treating drug addiction and alcoholism cases described in 20 C.F.R. § 404.1535. The Court stated that 20 C.F.R. § 404.1535 requires the ALJ to first make a disability finding before he decides the materiality of polysubstance abuse. *Id.* at 694. This disability finding must be based on substantial evidence of the claimant's medical limitations without deductions for the assumed effects of the polysubstance abuse. *Id.* The Court explained that "[i]f the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent." *Id.* at 694-95. Finally, the Court concluded that this failure to follow the proper procedure was not a harmless error because in this case, the error deprived the Court of a sufficient record with which to decide whether the claimant would have been found "not disabled" anyway. Predicting the ALJ's decision under the use of the proper procedure was therefore impossible, meaning that the procedural error was reversible. *Id.* at 695-96. The circumstances of *Williams*, 338 F. Supp. 2d 849, are substantially similar to those of *Bruggemann*.

The above cases, however, are only persuasive authority that is not binding on this Court.

19

Furthermore, there is contrary authority from this very Court.  In *Martin v. Astrue*, No. 7:07-71-JMH, 2008 U.S. Dist. LEXIS 10111 (E.D. Ky. Feb. 11, 2008), the ALJ determined that the claimant did not have a severe impairment, and thus was not disabled, absent his polysubstance abuse.  The claimant charged, as Plaintiff does, that the ALJ erred by addressing the materiality of the claimant's drug addiction and alcoholism before first determining whether the claimant was disabled.  *Id.* at *9.  In *Martin*, this Court was not persuaded that the ALJ had made a conclusory determination of disability.  "Rather, the ALJ recognized that Plaintiff's alcohol and drug use were not only a material contributing factor to a determination of Plaintiff's disability, they were *the* material contributing factor because the claimant 'does not have a severe mental impairment absent drug and alcohol use.'" *Id.* at *11-12 (quoting ALJ's opinion).  In addition, this Court found any error on the ALJ's part to be harmless because substantial evidence otherwise supported the ALJ's conclusions.  *Id.* at *12-13.

This Court's analysis in *Martin* is on par with the circumstances of the instant case.  In this case, as in *Martin*, the ALJ determined that Plaintiff did not have a severe psychological impairment absent any contributing effects of Plaintiff's drug and alcohol abuse.  "I find that the claimant has failed to establish the existence of any non substance induced depressive/anxiety/personality disorder.  As such I must find the claimant has no medically determinable mental impairment (apart from his substance abuse)."  ALJ's Opinion at 5.  Thus, in both this case and *Martin*, the ALJ did not make a conclusory determination of Plaintiff's disability; instead, he merely recognized that polysubstance abuse was *the* material contributing factor in Plaintiff's alleged psychological impairments.  Moreover, just as in *Martin*, apart from any procedural errors, the ALJ's decision is otherwise supported by substantial evidence of

20

record, as will be discussed below.

Finally, even if the Court accepts Plaintiff's cases as correct interpretations of the law and assumes that the ALJ committed a procedural error, there are at least two significant factors that distinguish this case from those Plaintiff relies on.  In the instant case, unlike in *Bruggemann* and *Williams*, the ALJ determined that Plaintiff would not be considered disabled even when considering the contributing effects of his polysubstance abuse.  *See* ALJ's Opinion at 11.  This is crucial, since the Eighth Circuit effectively stated in *Bruggemann* that a materiality determination need only be made at all if a claimant is found disabled when including the effects of drug addiction and/or alcoholism.  *See Bruggemann*, 348 F.3d at 694-95 ("If the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent.").  This was explicitly confirmed in *Fastner v. Barnhart*, 324 F.3d 981 (8th Cir. 2003), which was cited to in *Williams*.  *See Fastner*, 324 F.3d at 986 ("Generally, a determination under [42 U.S.C.] § 423(d)(2)(C)'s implementing regulations, 20 C.F.R. §§ 404.1535(b) and 416.935(b), is only necessary if the ALJ has found that the sum of that individual's impairments would otherwise amount to a finding of disability.").  As such, under the reasoning of Plaintiff's cases, the fact that the ALJ first addressed the polysubstance abuse's materiality is irrelevant, since the ALJ was not even required to decide the materiality issue in the first place.  Plaintiff's argument that this constitutes reversible error is a *non sequitur*.

In addition, as Defendant points out, the ALJ posed two separate hypothetical questions to the VE.  One of these questions assumed an individual with Plaintiff's impairments but without the added effects of polysubstance abuse, and the other question assumed the same

individual but with the effects of polysubstance abuse on his impairments factored in as well. ALJ's Opinion at 11.  The VE responded that in each hypothetical, there would be jobs available in significant numbers in the national economy that the individual could perform.  *Id.*  Such pairs of hypotheticals were not presented to the VEs in any of the cases cited by Plaintiff.  As such, unlike in those cases, in this case the Court has sufficient information to determine what the ALJ's disability finding would be had he followed Plaintiff's procedural directions and addressed the materiality issue last instead of first.  Namely, based on the VE's responses to the two hypotheticals, Plaintiff clearly would have still been found "not disabled."  Any such procedural error that the ALJ made in his analysis can only be harmless.  The Court rejects Plaintiff's argument.

## C.      Substantial Evidence

Any assumed procedural error that the ALJ committed in making his decision, however, is harmless only if the ALJ's decision is otherwise supported by substantial evidence of record.[1] Upon review of all record medical evidence presented to the Court, the Court is convinced that the ALJ's decision is supported by substantial evidence.  The Court disagrees with Plaintiff's arguments and will affirm the ALJ's decision.

The medical record is rife with evidence in support of the ALJ's conclusion that Plaintiff is not disabled within the meaning of the Social Security Act.  First, as a general matter, the record demonstrates Plaintiff's unwillingness to comply with his doctors' recommendations

---

[1]   Although Plaintiff focuses primarily on the procedural error argument and does not meticulously argue the substantial evidence issue, the Court believes that addressing the latter issue is necessary for a full resolution of this case's merits.  Doing so will also serve to clarify the record evidence in this case for purposes of any appeal taken from today's decision.

about appropriate treatment for his impairments.  For example, despite having been recommended surgery for his low back, Plaintiff chose to forego an operation.  Tr. at 283.  Dr. Muckenhausen also recommended that Plaintiff attend a headache/pain clinic and obtain physiotherapy or aquatherapy, an EEG, and an opthalmologic consultation.  Tr. at 197.  There are no records indicating that Plaintiff ever followed these recommendations.  In 2005, Plaintiff admitted that he had never been to a pain clinic, had never had spine surgery or steroid injections, and had never had a follow-up neurological evaluation.  Tr. at 179.

Furthermore, Dr. Martonffy ordered Plaintiff to get a drug screen before returning for further consultation or treatment.  Tr. at 179.  There is no record that Plaintiff ever obeyed this order and obtained the drug screen, or that he ever returned for a visit to Dr. Martonffy.  Plaintiff has also been repeatedly prescribed medication for his pain symptoms, but he admitted that he has not taken any of this medication since January or February of 2007.  Tr. at 292-93.  In fact, there was not even evidence that Plaintiff was ever on headache medication, despite having a medical card with which he could obtain such medication.  These incidents reflect a repeat failure by Plaintiff to address his symptoms in the ways called for by his medical sources and help justify a finding that Plaintiff is not disabled.

Other medical evidence helps validate the ALJ's conclusions.  After interviewing Plaintiff on February 8, 2005, Geiger described Plaintiff as appearing to have good contact with reality, logical and organized in response to Geiger's questions, and oriented to time, person, and space.  Tr. at 113-14.  Dr. Jones noted on February 9, 2005 that Plaintiff's problems with anger control, depression, and anxiety were not being addressed.  Tr. at 208.  After noting paralumbar and negative straight leg tenderness, Dr. Jones stated that Plaintiff had no overt spasm,

"questionable" radicular symptoms, and that Plaintiff could get on and off the examining table without difficulty and that he could walk heel-to-toe in tandem.  Tr. at 209.  Among Dr. Jones's other diagnoses of Plaintiff's impairments, she ruled out personality disorder and noted that a compression fracture of the lumbar spine was "questionable."  Tr. at 209.

Plaintiff's hospital stay following his February 18, 2005 motor vehicle accident was uncomplicated and his compression fracture and aneurysm were cleared by surgery.  Tr. at 118.  Further, although the hospital instructed Plaintiff to follow up with additional neurosurgery, whether Plaintiff actually did this is not documented in the record.  Tr. at 118.  March 2, 2005 records from Mount Hope Family Practice indicated that Plaintiff was alert and that he had no acute or respiratory distress.  Tr. at 151.  March 17, 2005 records also noted that Plaintiff was alert, that his chest and extremities were non-tender, that he was oriented times three, and that he had a normal mood and a flat affect.  Tr. at 149-50.  Additionally, on May 2, 2005, it was noted that Plaintiff's neck, back, and extremities were all non-tender, that he was alert, that he was oriented times three, and that he had a normal mood and affect.  Tr. at 146-47.

Findings from a June 9, 2005 lumbar spine MRI revealed disc space narrowing, but only mild central protrusion and circumferential bulging of disc material.  Tr. at 156.  The remainder of the MRI findings were almost completely normal: Plaintiff's other discs were normal; his spine canal was normal in caliber; he had only mild abnormal increased activity in the AC joint on the right; and the remainder of his skeleton appeared symmetric with no other focal abnormalities identified.  Tr. at 156-57.  Spine and Brain Neurological Center records from June 24, 2005 indicated that Plaintiff had no vision problems, depression, anxiety, or nervousness.  Tr. at 179.  These records also show that Plaintiff was oriented as to time, person, and place; that his

24

attention span, concentration, and memory were all intact; and that he had normal ranges of motion for his head, neck, and spine.  Tr. at 179.  Also, Plaintiff's right and left upper extremities showed negative Spurling's tests; his head, neck, and spine were negative for tenderness; his reflexes were grossly normal; an exam of his sensation was grossly intact; and his mood and affect were grossly normal.  Tr. at 179.  Plaintiff was also considered alert, calm, and cooperative on July 7, 2005 at Our Lady of the Way Hospital.  Tr. at 182-83.  Dr. Muckenhausen also found Plaintiff to be oriented to time, person, and place, and to be cooperative on July 12, 2005.  Tr. at 195.

August 16, 2006 records from the Sparrow Health System revealed that Plaintiff's physical appearance, gait, and speech were normal; that his mood and affect were appropriate and alert; that he was oriented times three; and that although his lower back was tender, his neck and abdomen were non-tender.  Tr. at 219, 221.  Additional records from September 26, 2006 state that Plaintiff appeared alert, that he was oriented times three, that his mood and affect were normal, and that he had no apparent motor or sensory deficit.  Tr. at 223.  Also, Plaintiff's neck and back both had painless ranges of motion, his back had a normal inspection, and his back and abdomen were both non-tender.  The only treatment recommended for Plaintiff's alleged pain and tenderness was very minor: he was instructed to apply heat or ice to the affected areas of his body and to take Ibuprofen or Tylenol.  Tr. at 233, 237.

Dr. Kountanis's medical evaluation also provides strong evidence to support the ALJ's disability decision.  Dr. Kountanis reported that Plaintiff had no cyanosis or edema of the limb, that he had no joint erythema or edema, that his radial and pedal pulses were intact, and that he only had "some pain" to percussion at the spinous process in the cervical and mid-thoracic

25

region.  Tr. at 241.  Dr. Kountanis also noted the following in her evaluation: Plaintiff had no

muscle spasm; straight leg testing was negative bilaterally in the sitting position; fine and gross

motor coordination was intact for ADLs and independent ambulating; range of motion was

normal to all areas, including the cervical and LS hip, spine, and knees; gait was normal; and he

could walk heel-to-toe and fully squat without assistance.  Tr. at 241.  Dr. Kountanis opined that

Plaintiff is still capable of performing sedentary work, that he can lift ten to fifteen pounds, and

that his standing, walking, sitting, pushing, and pulling are not affected by his impairments.  Tr.

at 244-45.

Dr. Marshall's assessment also provides strong evidentiary support for the ALJ's opinion.

Dr. Marshall opined that Plaintiff's impairments do not meet or medically equal the Social

Security listings; that he can lift and carry twenty pounds frequently and fifty pounds

occasionally; and that his standing, walking, sitting, and his physical functions are not affected by

his impairments.  Tr. at 250-52.  Further, Dr. Marshall stated that Plaintiff can frequently climb

ramps or stairs, stoop, and kneel, and that his impairments did not cause any environmental

restrictions.  Dr. Marshall even expressed uncertainty over Plaintiff's alleged left-eye blindness.

Tr. at 250-52.  In addition, August 29, 2007 records from Our Lady of the Way Hospital stated

that Plaintiff's mood and affect were normal, that he appeared alert, and that the rest of his

physiological and neurological examinations were normal.  Tr. at 261.

Evidence from the reports of state agency reviewing physicians and psychiatrists further

confirm the ALJ's conclusions about Plaintiff's alleged impairments.  Psychiatrist Liu's

psychiatric review technique and mental RFC assessment indicated that Plaintiff only has

moderate limitations in just a few specific areas and abilities, and that he has no significant

limitations in all other areas and abilities.  Tr. at 119-27, 133-34.  Liu opined that Plaintiff's

medical evidence does not establish the "C" criteria of the Social Security listings and that

Plaintiff is still able to perform simple tasks in a work setting.  Tr. at 129-30, 135.  Liu's report

was affirmed in full by state agency reviewing psychiatrist Jacobson.  Tr. at 158-76.  Statements

from Dr. Holmes's assessment of Plaintiff's physical RFC also favor the ALJ's own assessment:

Plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently; he can stand,

walk, and sit six out of eight hours when allowed normal breaks; and that he was only partially

credible when describing his symptoms.  Tr. at 138, 144.  Dr. Holmes's assessment was affirmed

by Dr. Baez-Garcia.  Moreover, Dr. Baez-Garcia added that Plaintiff is not limited in the use of

his extremities, that he can frequently crouch and kneel, that he has no environmental restrictions

other than to avoid concentrated exposure to vibration, and that his symptom allegations were

only partially credible.  Tr. at 199-203.

Further, Plaintiff's routine activities suggest that he is still able to perform at least

sedentary work, as the ALJ determined he could.  These activities include watching television,

attending to his personal care, preparing sandwiches or microwaveable food items, folding

clothes, doing light cleaning, reading the newspaper, handling his finances, talking on the

telephone, and sometimes going out for social activities or shopping.  Tr. at 99-104.  Although

this list of activities may not support a conclusion that Plaintiff can do any kind of work, no

matter how strenuous it may be, they certainly support the inference that Plaintiff is able to

perform the simple, mundane, and/or repetitive tasks that might be performed in a range of

sedentary occupations.  Accordingly, Plaintiff's routine activities provide additional support for

his conclusion that Plaintiff is not disabled.

Finally, an important factor in the ALJ's disability decision was his belief that Plaintiff's statements about the severity of his symptoms were not entirely credible.  Towards the end of his opinion, the ALJ followed the two-part process, discussed above, that is used for determining the credibility of a Social Security claimant's credibility regarding the severity and intensity of his medical symptoms.  After discussing the record evidence relied on to reach his conclusions here, the ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible.  ALJ's Opinion at 9.  Again, the Court's review of this credibility determination is limited to whether substantial evidence supports the finding.  In this case, the Court holds that substantial evidence does support the ALJ's finding.

In finding that Plaintiff's credibility was "less than good," *id.*, the ALJ cited a variety of contradictory statements Plaintiff has made over the years that cast doubt on his veracity. Plaintiff told Geiger that he had never had problems with alcohol or drugs, but later admitted that he had been involved in four inpatient substance abuse programs.  This caused Geiger to report that Plaintiff was not forthcoming about his past and present use of mood altering substances. Tr. at 112.  Plaintiff did not mention any history of alcohol abuse to Mount Hope Family Practice, Tr. at 145-51, he told Big Sandy Health Care that his drinking was only for "recreational use," Tr. at 154, and he told Dr. Martonffy that he did not drink alcohol, Tr. at 179. These statements are plainly contradictory.  Furthermore, Plaintiff denied the use of any illicit drugs to Dr. Muckenhausen and admitted to drinking only socially, and also told the Spine and Brain Neurological Center that he had never been convicted of a felony or misdemeanor, despite

28

the fact that he had been incarcerated from 1986 to 1994.  Tr. at 179, 194.  Such omissions and blatant lies clearly impeach Plaintiff's credibility as to any statements he makes, including those describing his symptoms.

In addition, the ALJ noted that although Plaintiff claims to be attending Alcoholics Anonymous meetings, at his hearing Plaintiff admitted that he has no sponsor and that he has not attended a meeting since moving to Kentucky in July 2007.  In response to the ALJ's question about what step in the Alcoholics Anonymous program Plaintiff was on, he responded that he "was working on all 12 steps."  Tr. at 294-95.  Since Alcoholics Anonymous is a consecutive twelve-step program in which the individual advances to a new step only when he feels that he has mastered the previous step, Plaintiff's response implies that he is not actually participating in Alcoholics Anonymous at all, further straining his credibility.  *See* ALJ's Opinion at 9.  Plaintiff's series of untrue and contradictory statements provides substantial evidence to find, as the ALJ did, that Plaintiff's symptom statements are not entirely credible.  *Id.*

In sum, the Court holds that substantial evidence supports the ALJ's determination that Plaintiff has not been disabled since his alleged onset date of August 1, 2004.  As a reminder, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip*, 25 F.3d at 285-86.  Therefore, provided that substantial evidence supports the ALJ's decision, as it does in this case, the Court is required to uphold that decision, even if another outcome could have reasonably been reached from the record evidence.  *Jones*, 336 F.3d at 475.  Since the ALJ's disability determination applies the correct legal standards and is supported by substantial evidence, the Court will uphold it.  *See Warner*, 375 F.3d at 390.  No reversible error was committed.

**WHEREFORE,** the Court being sufficiently advised, and for the reasons stated above:

(1)      Plaintiff's Motion for Summary Judgment is **DENIED**; and

(2)      Defendant's Motion for Summary Judgment is **GRANTED**.

Dated this 14th day of October, 2008.

**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**